UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOHAMMAD CONGDON-BOSTON,

                Petitioner,                    Case Number 2:09-CV-12212
                                                  Honorable Lawrence P. Zatkoff

v.

BLAINE LAFLER,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS

This matter is before the Court on Petitioner Mohammad Congdon-Boston's petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254.  Petitioner is serving a 18-to-30 year sentence for his Wayne Circuit Court conviction for second-degree murder,  MICH. COMP. LAWS 750.317. Petitioner claims that his guilty plea was involuntary because he was not taking medication for his bipolar condition at the time of his plea and because other inmates in the jail gave him erroneous advice.  The record  shows, however, that Petitioner voluntarily accepted a plea bargain on the day of trial when he learned that a key witness for the prosecution who had previously been unavailable was located and would appear at trial.  Petitioner also claims that his sentencing guidelines were incorrectly scored and that his sentence was based on facts not admitted or proved beyond a reasonable doubt.  In fact, Petitioner received the exact sentence called for in his sentencing agreement. The Court will therefore deny the petition, deny a certificate of appealability, and deny permission to proceed on appeal in forma pauperis.

## I. Facts and Procedural History

Petitioner and his co-defendant, James Terrell, were charged with first-degree premeditated murder for the beating death of Ron Franks.  At the preliminary examination, Deidra Merritt testified that she was at a house in the area of Forrer and Fargo streets in Detroit with Franks.  They went into the basement and smoked crack-cocaine together.  When Petitioner and co-defendant arrived they became enraged at Franks because he did not buy the cocaine from them and was smoking it in their house.  Terrell began to punch and kick Franks until his head and face were bloodied.  When Franks attempted to escape from the beating, Petitioner pushed him back towards Terrell.  At some point, Franks was allowed to leave the house.

When Petitioner gave the factual statement for his guilty plea, he testified that he and Terrell pursued Franks onto the street after he left the house.  When they caught up to him, both Petitioner and Terrell began kicking the victim against a curb.  Petitioner admitted that he believed the victim would die.  The victim was dead on arrival at the hospital.

On March 26, 2007, the first date set for trial, the prosecution informed the court that it was not ready because it was unable to locate Deidra Merritt.  The prosecutor asserted that Petitioner and Terrell were attempting to have family members and friends talk with Merritt.  The court warned them against witness intimidation.  The court set trial for the following month, but left open the possibility of beginning trial the next day if the witness could be located.

Indeed, Meritt was located and brought to court the following day, and a jury was selected. A few weeks later, on the next trial date, Petitioner informed the court he wished to accept a plea bargain.

Defense counsel stated that the terms of the agreement were that Petitioner would plead

guilty to the reduced charge of second-degree murder with a sentencing agreement of 18-to-30 years. Petitioner was placed under oath and indicated his understanding of the agreement. The court informed Petitioner of all the trial rights he would be waiving by pleading guilty, and Petitioner indicated his understanding and acknowledgment. Petitioner denied that anyone had threatened him with anything if he did not enter into the plea. Petitioner also denied that anyone had promised him anything other than what was placed on the record. Petitioner indicated that he was entering into the plea freely, voluntarily, and understandingly.

Petitioner then gave the following factual basis for the conviction:

> Petitioner: The night of November 6th, 2006, we were over at Greenfield and Fargo at a house. And Ronald Franks had came over to the house and he didn't purchase any drugs from us. He walked into the basement without saying anything, purchasing drugs, and I took that offensive. I waited a few seconds. And I went into the basement and caught him smoking somebody else's drugs but I didn't do anything.
>
> I walked back upstairs and that is when me and Mr. Terrell went back downstairs and began fighting with the guy. And I hit him and I stomped him a couple of times. And the guy was escorted out the house. And after he was escorted out the house, we ran and chased him down and stomped his face against the curb numerous amounts of time.
>
> The Court: And when you left him that evening, was it your belief that he was going to die?
>
> Petitioner: When I left him?
>
> The Court: Yes.
>
> Petitioner: On the street?
>
> The Court: Yes.

-3-

Petitioner: Yes.

The Court: And you knew that the blows that you were striking to Mr. Franks at that time could and would result in death?

Petitioner: Yes.

Plea Tr. at 11-12.

At the sentencing hearing Petitioner moved to withdraw his plea. His counsel explained

Petitioner's reasons for wishing to do so:

I'm asking the Court as the Court hears my argument on the issue that it takes into consideration Mr. Boston is 17 years of age. And even according to the presentence report on I think it's page five, he suffers from a bipolar disorder which I just learned today. He said he wasn't taking his medication on the day of trial.

But Mr. Boston wishes to withdraw his plea, your Honor. And it's permissible under the court rules as justice demands, and there's no prejudice to the prosecution.

I would argue that justice demands based on his, his youthful age, also of his mental condition.

And the reason why he wants to withdraw, your Honor, is he feels or he possibly believes he was overwhelmed when the information that an amended witness had been located about what the consequences were.

As the Court remembered we already had the jury picked. We were beginning to start oral argue-beginning to have open, opening statements and that's when the prosecution requested a detainer because they had located a missing witness, somebody who they hadn't been able to locate for about three or four months.

-4-

> Mr. Boston says he was heavily influenced by
> what was being said in the holding cell where there
> was other prisoners.  The other prisoners gave him all
> kinds of horror stories that scared him into making a,
> a rational decision.   It's based on that that he feels he
> was under duress.

Sent. Tr. at 3-4.

The trial court denied the motion and sentenced Petitioner under the terms of the agreement.

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, raising the

following claims:

> I. Petitioner is entitled to resentencing where the guidelines were scored inaccurately
> and his sentence was based on facts not admitted by Petitioner or found beyond a
> reasonable doubt by a jury.
>
> II.  The trial court abused its discretion in denying Petitioner's presentence motion
> to withdraw the plea.

The application was denied "for lack of merit in the grounds presented." *People v. Congdon-Boston*,

Mich. Ct. App. No. 282945 (March 31, 2008).  Petitioner subsequently filed an application for leave

to appeal to the Michigan Supreme Court, which raised the same claims.  The Michigan Supreme

Court denied the application in a standard order. *People v. Congdon-Boston*, Mich. Sup. Ct. No.

136388 (September 22, 2008).

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if

he can show that the state court's adjudication of his claims on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or

-5-

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410–11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories

-6-

supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*.  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979)) (Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

### III. Analysis

### A.  Sentencing Guidelines

Petitioner first asserts that the trial court incorrectly scored the sentencing guidelines and based his sentence on facts not proven beyond a reasonable doubt to a jury or admitted by Petitioner.

The trial court's "alleged misinterpretation of state sentencing guidelines . . . is a matter of state concern only," *Howard v. White*, 76 Fed. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (citing

*Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Even if Petitioner's claim was cognizable on habeas review, he was sentenced pursuant to a plea and sentencing agreement, which called for the exact same sentence as he received. A defendant who consents to a specific sentence in a plea agreement and receives the exact sentence that he bargained for waives the right to challenge the sentence on appeal or collateral review. *See United States v. Livingston*, 1 F. 3d 723, 725 (8th Cir. 1993).

Petitioner also alleges that his sentence was improperly enhanced on the basis of facts which he did not admit and which were not determined by the jury. This claim is based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004).

In *Apprendi*, the Supreme Court held that,"[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Blakely*, the Supreme Court stated "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303 (emphasis omitted).

Unlike the determinate sentencing scheme at issue in *Blakely*, Michigan has an indeterminate sentencing scheme in which the maximum penalty is set by statute, but the minimum penalty is determined by the sentencing court and must fall within a mandated guidelines range. *Montes v. Trombley*, 599 F.3d 490, 496 (6th Cir. 2010). "*Apprendi's* rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum." *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (citing *Harris v. United States*, 536 U.S. 545, 563–68 (2002) (plurality opinion) and 569–70 (Breyer, J., concurring)), cert.

-8-

denied, ___ U.S. ___, 130 S. Ct. 3413, 177 L. Ed. 2d 325 (2010).  Petitioner's sentence did not

exceed the statutory maximum of life imprisonment or any number of years.  Therefore, his *Blakely*

claim lacks merit.

Accordingly, Petitioner is not entitled to relief on any of his sentencing claims.

## B.  Validity of Plea

Petitioner's second claim asserts that his guilty plea was involuntary.  He primarily argues

that he suffers from bipolar disorder and was not on his medication at the time of the plea hearing.

A plea of guilty must be knowingly and voluntarily made.  The defendant must be aware of

the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Corr. Inst.*, 927

F. 2d 256, 257 (6th Cir. 1991).  The defendant must also be aware of the maximum sentence that can

be imposed for the crime for which he is pleading guilty. *King v. Dutton*, 17 F. 3d 151, 154 (6th Cir.

1994).  When a petitioner brings a federal habeas petition challenging his plea of guilty, the state

generally satisfies its burden by producing a transcript of the state court proceedings showing that

the plea was made voluntarily. *Garcia v. Johnson*, 991 F. 2d 324, 326 (6th Cir. 1993).  The factual

findings of a state court that the guilty plea was properly made are generally presumed correct.

Petitioner must overcome a  heavy burden if the federal court is to overturn these findings by the

state court. *Id.*  Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption

that his guilty plea, as evidenced by the plea colloquy, is valid. *See Hastings v. Yukins*, 194 F. Supp.

2d 659, 669 (E.D. Mich. 2002).

During the plea colloquy, Petitioner stated that no one coerced or pressured him into

accepting the plea.  The terms of the plea agreement were explained to him in clear language, and

there is no indication in the record that he was in anyway confused or incompetent to enter a plea

-9-

during the proceedings.  Indeed, Petitioner responded appropriately to the trial judge's questions,
indicating comprehension of those questions.  Moreover, his narrative testimony concerning the
crime was coherent and indicates his clear understanding of the charges.  Other than alleging that
he suffers from bipolar disorder, Petitioner proffered no evidence in the state courts—and he offers
none here—to suggest that this disorder rendered him incompetent to plead guilty.  In fact,
Petitioner's counsel frankly acknowledged at the sentencing hearing that Petitioner decided to avail
himself of the prosecutor's plea offer when he learned that the key witness against him had been
located and would testify against him.  A sudden realization that the prosecutor would be better able
to prove his case than Petitioner previously believed does not render a plea involuntary.

The Court finds that the trial court's conclusion that the plea was voluntarily entered was not
contrary to or an unreasonable application of Supreme Court precedent.  Petitioner acknowledged
at the hearing that he was entering into it voluntarily, knowingly, and understandingly. He is "bound
by his statements" during the plea colloquy. *Ramos v. Rogers*, 170 F.3d 560, 564 (6th Cir.
1999)(internal quotation omitted).  Thus, the Court denies habeas corpus relief with respect to this
claim.

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28
U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the
applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.
§ 2253(c)(2).  When a district court denies a habeas claim on the merits, the substantial showing
threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's
assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473,

484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336–37. The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

### V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis is

**DENIED**.

S/Lawrence P. Zatkoff                       
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  March 14, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 14, 2012.

S/Marie E. Verlinde                       
Case Manager
(810) 984-3290